# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

ZAINAB H.,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations

        Defendant.

Case No. 2:17-cv-01774-TLF

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff appeals the Commissioner's denial of her application for supplemental security income ("SSI") benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## BACKGROUND

On December 18, 2012, plaintiff applied for SSI benefits under Title XVI of the Social Security Act. Dkt. 8, Administrative Record (AR) 214. The plaintiff was admitted to the United States as a refugee from Iraq on October 18, 2010. AR 214, and she has been living in the United

States since that date. She stated that her disability started in January 1997. AR 231. The Commissioner denied the application on initial administrative review and on reconsideration.

Following a hearing, an administrative law judge ("ALJ") employed the Commissioner's five-step sequential evaluation process to find plaintiff could perform other jobs existing in significant numbers in the national economy at step five of that process, and therefore that she was not disabled at that step. AR 24-30.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits or, in the alternative, for further administrative proceedings.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless it is: (1) based on legal error; or (2) not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The ALJ is responsible for determining credibility, and for resolving any conflicts or ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Trevizo*, 871 F.3d at 674-75. That is, where the evidence is sufficient to support more than one outcome, the Court uphold the decision the ALJ made. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court,

however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* at 1010. Rather, only the reasons the ALJ identified are considered in the scope of the Court's review. *Id.*

## ISSUES FOR REVIEW

(1) in failing to properly evaluate plaintiff's migraines at step three of the sequential disability evaluation process;

(2) in failing to properly evaluate the opinion of examining psychiatrist, Kathleen Andersen, M.D.;

(3) in failing to give valid reasons for discounting plaintiff's credibility concerning her subjective complaints; and

(4) in failing to give germane reasons for rejecting the testimony of plaintiff's husband.

## HOLDING

After carefully considering each of the issues plaintiff has raised, along with the ALJ's decision and the administrative record, the Court holds the ALJ erred in failing to properly evaluate Dr. Andersen's opinion, in discounting plaintiff's credibility, and in rejecting the testimony of plaintiff's husband. Because of those errors, the ALJ's decision is reversed and remanded for further administrative proceedings.

## DISCUSSION

I. *Examining Psychiatrist Kathleen Anderson, M.D.*

An ALJ must give "clear and convincing" reasons supported by substantial evidence to reject a treating or examining physician's uncontradicted opinion. *Revels v. Berryhill*, 874 F.3d

648, 654 (9th Cir. 2017). Even where contradicted, the ALJ may reject a treating or examining physician's opinion only by providing "specific and legitimate" reasons that are supported by substantial evidence. *Id.* The same applies to the opinion of a treating or examining psychologist. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 and n.7 (9th Cir. 1995) (opinions of "physicians" include those from psychologists and other "acceptable medical sources"[1])).

The ALJ can meet this requirement by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his or her interpretation thereof, and making findings. *Revels*, 874 F.3d at 654. The ALJ generally must weigh a treating physician's opinion more heavily than an examining physician's, and an examining physician's opinion more heavily than a non-examining (reviewing) physician's. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). A non-examining (reviewing) physician's opinion is not by itself sufficient to justify rejecting the opinion of either an examining or a treating physician, *Revels*, 874 F.3d at 655, though it can constitute substantial evidence if "it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ need not discuss every item of evidence presented, *Hiller v. Astrue* 687 F.3d 1208, 1212 (9th Cir. 2012). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995). In addition, the ALJ may reject even a treating physician if it is "brief, conclusory, and inadequately supported" by objective medical findings or "the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Kathleen Andersen, M.D., performed a psychiatric evaluation of plaintiff in late March

---

[1] "Acceptable medical sources" include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1502(a); 20 C.F.R. § 416.902(a); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1.

2016. AR 739-48. As part of that evaluation, Dr. Andersen reviewed plaintiff's past medical records, obtained her self-report of her medical and personal history, and conducted a mental status examination. *Id.* at 739-44. Dr. Andersen diagnosed plaintiff with post-traumatic stress disorder, a major depressive disorder, and a panic disorder. *Id.* at 744.

In concluding her evaluation, Dr. Andersen commented:

> I do not feel that I am getting a complete picture from [plaintiff] in terms of history, personal situation. Clearly, there were many times during the interview when it seemed she was not answering questions straightforwardly. I gather that there have been multiple times in the past when she has not followed through on recommendations from various providers about medical issues. . . . Multiple providers have felt that there was a strong psychiatric component to her headaches and possibly other symptoms. She does readily acknowledge symptoms related to a diagnosis of Post-Traumatic Stress Disorder today. These include hypervigilance, startling easily, intrusive memories of past traumatic experiences, worry that something bad is going to happen to her and her family, impaired concentration, sleep disturbance with nightmares, irritability. She also reports symptoms of major depressive disorder including depressed mood, anhedonia, insomnia, low energy, psychomotor retardation. She reports experiencing panic attacks and there are also a variety of neurological symptoms reported including headaches, fainting, feelings of numbness in various parts of her body. There may be other psychiatric diagnoses present, but it would take more extended interactions with her to sort these out.
>
> She reports having a sixth grade education. She has never worked outside of her home. She does not go out of her house ever by herself. She does not speak English.

AR 744. Dr. Andersen then went on to opine:

> . . . Based on the above, it would be extremely difficult to picture [plaintiff] going out and attending a job on a daily basis, being away from home for a full work shift consistently. If she were somehow to be put in a work situation, there would be undoubtedly an increase in anxiety-related symptoms with episodes of panic, an increase in various reported neurologic complaints. She would be entirely unmotivated to attempt to master tasks and complete tasks in a work situation. Again, I did not feel her performance on cognitive testing today was a reflection of her true abilities. . . .

*Id.* at 744-45. In addition, Dr. Andersen felt plaintiff's "chances for any significant improvement

occurring in the future" were "extremely minimal," given that it appeared she had had "relatively minimal mental health intervention." *Id.* at 745. Dr. Andersen also indicated plaintiff would have marked to severe limitations in a number of specific mental functional areas. *Id.* at 746-47.

The ALJ gave only "partial weight" to Dr. Andersen's opinion. AR 28. The ALJ pointed to Dr. Anderson's comment that she did not feel she was getting a complete history from plaintiff, while at the same time assessing plaintiff with marked to severe cognitive and social limitations. *Id.* The ALJ also stated that Dr. Andersen saw plaintiff on only one occasion and had no independent basis for observing plaintiff's actual activities or social interaction. *Id.* As such, the ALJ determined Dr. Andersen's opinion was necessarily based on plaintiff's self-reported limitations, which the ALJ found unreliable. *Id.*

These do not constitute specific and legitimate reasons for discounting Dr. Andersen's opinion. A physician's opinion that is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan*, 169 F.3d at 602). When that opinion "is not more heavily based on a patient's self-reports than on clinical observations," though, "no evidentiary basis" exists for rejecting it. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).

Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Buck*, 869 F.3d at 1049. Further, the rule allowing an ALJ to reject a mental health medical source's opinion that relies on a claimant's self-reports recently has been called into question by the Ninth Circuit:

> . . . "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology...." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C. Cir. 1987)). Psychiatric evaluations may appear subjective,

especially compared to evaluation in other medical fields. Diagnoses will
always depend in part on the patient's self-report, as well as on the clinician's
observations of the patient. But such is the nature of psychiatry. *See Poulin*,
817 F.2d at 873 ("[U]nlike a broken arm, a mind cannot be x-rayed.").Thus,
the rule allowing an ALJ to reject opinions based on self-reports does not
apply in the same manner to opinions regarding mental illness. . . .

*Id.*

Defendant argues *Buck* does not control here, because unlike in *Buck* the ALJ identified internal inconsistencies between plaintiff's self-reports and Dr. Andersen's ultimate conclusions. As plaintiff points out, however, Dr. Andersen was aware that she may not have been getting "a complete picture" of plaintiff, yet Dr. Andersen still concluded that plaintiff would be subject to significant mental functional limitations.

"A mental health professional," furthermore, "is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports." *Cope v. Colvin*, 2016 WL 6439940, at *3 (W.D. Wash. Nov. 1, 2016) (quoting Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 4 (Oxford University Press 1993)). As such, Dr. Andersen is as a licensed psychologist far more qualified to determine whether plaintiff's self-reports – even if not reliably complete – are reflective of serious mental health impairments or limitations than a lay person such as the ALJ.

The ALJ is responsible for determining credibility, and for resolving any conflicts or ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). In this case, the record does not contain substantial evidence that plaintiff's self-reports *are* in conflict with Dr. Andersen's conclusions. It is true that "[t]here were certainly times during the interview when" Dr. Andersen felt plaintiff "was not providing accurate information" (AR 739), and that Dr. Andersen was "skeptical" when plaintiff told her she did not know her own age or the age of her youngest child (*id.* at 742-43). Dr. Andersen also "did not

have the impression that she was answering all questions on cognitive testing straightforwardly." *Id.* at 743.

But Dr. Andersen considered these issues in her opinion regarding plaintiff's functional capabilities. *See* AR 744. The ALJ improperly substituted her lay opinion for the expert opinion of Dr. Andersen. *Gonzalez Perez v. Sec'y of Health and Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for physician's); *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

The ALJ's other stated reasons for rejecting Dr. Andersen's opinion are also invalid. The mere fact that Dr. Andersen saw plaintiff on one occasion does not detract from her ability to offer an opinion as to plaintiff's mental health condition. Indeed, examining medical sources almost by definition base their opinions on one-time evaluations. In addition, as noted above, Dr. Andersen did not merely rely on her own observations and mental status examination findings, but reviewed plaintiff's prior medical records as well. AR 739-41.

While it may be true, furthermore, that Dr. Andersen had no independent basis to observe plaintiff's actual activities or social interactions, this is generally true for all medical treatment and examining sources. Nor is there any indication that any other medical source in the record who also saw plaintiff had such an independent basis either. Lastly, even if it were proper in this instance to look to Dr. Andersen's reliance on plaintiff's self-reports to reject Dr. Anderson's opinion, as explained below the ALJ also failed to offer valid reasons for discounting plaintiff's credibility concerning her subjective complaints.

II.     *Plaintiff's Credibility*

The ALJ "engages in a two-step analysis" when assessing a claimant's credibility

regarding subjective pain or symptom intensity. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). The ALJ first must determine whether there is objective medical evidence of a mental or physical impairment that "could reasonably be expected to produce the pain or other symptoms alleged*." Id.* If this test is met and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Id.*

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* quoting (*Lester*, 81 F.3d at 834). In doing so, the ALJ may use "ordinary techniques of credibility evaluation," such as inconsistencies in the claimant's statements or between the claimant's statements and his or her conduct, any "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and whether the claimant has engaged activities of daily living "inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations omitted).

The credibility determination is not an examination of the claimant's overall "character", however, but rather an assessment of the claimant's testimony and other statements that is "designed to 'evaluate the intensity and persistence of symptoms after" the ALJ finds the claimant has a medically determinable impairment that could reasonably be expected to produce those symptoms. *Trevizo*, 871 F.3d at 678 n.5 (warning that the inquiry should not "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting and citing SSR 16-3p, 2017 WL 5180304).

The ALJ discounted plaintiff's credibility in part because the objective medical evidence did not support her allegations of disabling migraines. AR 25. An ALJ may discount a claimant's

testimony on the basis that it is unsupported by objective medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).Although plaintiff is correct that a February 2013 MRI revealed findings supportive of a diagnosis of migraines (AR 399-400), there is an absence of objective evidence that plaintiff's migraines have resulted in the severity of functional limitations alleged (AR 306-07, 309, 314, 316, 320, 338, 342, 349, 352-53, 365, 382, 385, 388, 420, 455-56, 483, 462, 491, 494, 500, 505, 515, 522, 532, 551, 570, 612, 642, 656, 667, 671, 673, 688). As such, this reason for discounting plaintiff's credibility is supported.

That being said, the ALJ is not free to reject plaintiff's subjective complaints solely on the basis of an absence of objective medical support in the record. *Burch*, 400 F.3d at 680. None of the other reasons the ALJ gave for discounting plaintiff's credibility, furthermore, withstand scrutiny.

One reason the ALJ gave is plaintiff's noncompliance with recommended treatment for her migraines and mental health issues. AR 25-27. Specifically, the ALJ noted that plaintiff had "a history of starting and stopping medication after a short period due to alleged side effects," and in some instances "due to no definite benefit." AR 25-26. The ALJ further noted that treatment providers indicated plaintiff "had not really given any of the prescribed treatments for migraines a full trial." AR 26; *see also* AR 27.

A claimant's unexplained or inadequately explained reasons for not seeking or following a prescribed course of treatment is a valid factor to consider in discounting the credibility of a claimant's testimony. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). An ALJ, however, "must not draw any inferences" about a claimant's symptoms from such a failure, "without first considering any explanations" the claimant "may provide, or other information in the case record, that may explain" that failure. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186,

at *7. Thus, it is improper for to discount a claimant's credibility based on failure to pursue treatment, when the claimant "has a good reason for not" not pursuing it. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, the ALJ failed to properly consider whether plaintiff had good reasons for failing to seek or not complying with treatment. As the ALJ herself noted, the record reveals plaintiff has tended to stop her medications shortly after starting them, either due to their side effects or lack of effectiveness. AR 313, 315, 319, 342, 349, 352-53, 381, 385, 388, 420, 456, 481-82, 499, 611, 742. One of plaintiff's treatment providers, Veronique Alcaraz, M.D., commented that she "has really not given any of the prescribed treatments for migraines a full trial." AR 482. Another, Kali Arthurs, PA-C, felt plaintiff had not been compliant with recommended treatments. AR 483.

Yet the ALJ did not resolve ambiguity in the record about potential reasons why plaintiff did not comply with prescriptions. For example, although Dr. Alcaraz believed plaintiff had not given any of her migraine medications "a full trial" (AR 482), plaintiff reported to another provider that "she has a weak stomach and would not tolerate a lot of medications" (AR 611). *See also* AR 420 (reporting she "stopped iron because of abdominal symptoms:"). Thus, the record reflects that plaintiff may have a physical condition that would continue to result in unwanted side effects – or lack of effective treatment outcomes – even if she had persisted with each medication. *See* 20 C.F.R. § 416.930(c) (stating that the claimant's physical and mental limitations are considered when determining if a good reason exists for not following treatment).

A third treatment provider, Katherine Bennett, PA-C, stated that not much could be done medically if plaintiff was "unwilling to try treatments with and [sic] open mind." AR 532 (stating further that plaintiff reported feeling that neither taking any medication nor talking to a counselor

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 11

would work); *see also* AR 642 (commenting that plaintiff was "not interested in medications").[2]

Yet plaintiff may have had a valid reason for not following through, as this same provider commented in a subsequent treatment note that plaintiff had reported that "[i]t has been hard for her to get mental health help here in [sic] states as needing interpreter and has little trust for interpreters in her community." AR 570.

Although the ALJ mentioned some of the above evidence in commenting on plaintiff's non-compliance, she offered no analysis of plaintiff's stated reasons for resisting or failing to follow through with recommended treatment. Further, while the record does indicate plaintiff did not follow through on her prescription for physical therapy (AR 482), again the ALJ did not inquire as to whether plaintiff had a good reason for not doing so. Certainly, plaintiff's need for, but lack of trust in, interpreters could constitute one such reason. *See* 20 C.F.R. § 416.930(c) ("We will consider your . . . educational, and linguistic limitations (including any lack of facility with the English language.").

The ALJ also discounted plaintiff's credibility on the basis of inconsistencies noted by neurologist Benjamin Podemski, M.D. AR 25. In particular, the ALJ pointed to a statement by Dr. Podemski during a September 2014 examination of her that:

> She is sitting throughout the evaluation holding her head, moving it side to side and moaning, but oftentimes she will be distracted when I am engaged with her husband and does not manifest pain behavior whatsoever. She was not manifesting pain behavior during her neurologic examination.

AR 500. But Dr. Podemski gave no indication that plaintiff was malingering or exaggerating her symptoms, and although he described "what [he] perceive[d] to be some histrionic behavior," he nevertheless still gave her a diagnosis of "[c]hronic daily headaches." AR 500.

---

[2] In a later treatment note, though, Ms. Bennett reported that plaintiff was "open to medication, but stopped once [sic] didn't notice effect." AR 656; *see also* AR 673 (reporting as well that plaintiff was "hesitant to go to behavioral health, but may be willing to try again for advice on medications").

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 12

Dr. Podemski did comment that the exact etiology of those headaches was "unclear", and that the "[u]nderlying structure and physical contributions appear highly unlikely in view of the extensive tests done to date and its chronic nature." AR 500. However, these comments do not necessarily call into question plaintiff's credibility, given that as noted above, MRI evidence of migraines was found. *See id.* at 399-400. Other treatment providers, furthermore, felt plaintiff's headaches were caused at least in part by psychological factors. *See id.* at 382 ("seems likely that situational psychological factors may figure heavily"), 385 ("headaches . . . are definitely stress related"), 516 ("History suggest [sic] related to stress.").

Another reason the ALJ gave for finding plaintiff to be not fully credible was that she "did not start mental health therapy until after her first hearing in this matter and approximately one month prior to her second hearing."[3] AR 26. However, the Ninth Circuit has found it to be "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding the fact that a claimant with mental health issues may "not seek treatment for a mental disorder until late in the day" is not a proper basis upon which to discount the accuracy of the claimant's testimony, noting those with depression often do not recognize their condition reflects potentially serious mental illness)).

The ALJ also discounted plaintiff's credibility because:

> The claimant's allegations of disabling depression and anxiety and her presentation at [sic] hearing and on consultative exam in March 2016 conflicts with her presentation in other settings. At [sic] hearing, the claimant appeared alert, smiling, and she made good eye contact. Yet her testimony and response to questions was similar to that noted by Dr. Andersen . . . She answered "I have no idea" or "I don't know" to even routine questions and as [sic] how old her own children were or whether they were in elementary school or high school. It appeared she was not providing accurate information or answering

---
[3] An initial hearing was held before the ALJ, but was continued due to plaintiff not feeling well. AR 20, 37-42.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 13

questions straightforwardly, as was also noted by Dr. Andersen during her
exam . . .

AR 26. An ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). However, a claimant's subjective complaints may not be rejected "solely on the basis of" the ALJ's personal observations. SSR 95-5p, 1995 WL 670415, at *2.

Thus, even if the ALJ properly looked to plaintiff's hearing demeanor – which as explained herein is questionable given that Dr. Andersen herself assessed significant mental functional limitations despite the issues with accuracy and straightforwardness noted in plaintiff's answers – none of the ALJ's other reasons for rejecting plaintiff's complaints regarding her mental impairments and limitations were valid. Accordingly, the ALJ could not rely on this basis for rejecting plaintiff's credibility.

The ALJ next pointed to the relatively benign mental status examination findings in the record. AR 26. As noted above, a determination that a claimant's complaints are inconsistent with the objective medical evidence is a valid basis for discounting a claimant's credibility, as long as that is not the sole basis for discounting it. *Burch*, 400 F.3d at 680. Here, the ALJ is correct that most of plaintiff's mental status examination findings are fairly normal, including those obtained by Dr. Andersen. *See* AR 342, 349, 352-53, 385, 388, 420, 455, 462, 726-28, 734, 743; *but see* AR 382, 494, 671, 727, 744. However, given the ALJ's errors in giving only partial weight to Dr. Andersen's opinion, her reliance on this basis for discounting plaintiff's credibility is insufficient to uphold the overall credibility determination.

The ALJ discounted plaintiff's credibility on the basis of her activities of daily living. AR 27. The ALJ found that despite testifying that she did not do anything, the record indicates she was "active" and did "some household chores as well as cooking," "prepar[ed] food for her

family (including her 'little son' because of food allergies)" and did "light housework." AR 27. The ALJ also found that although plaintiff testified that she had no friends, she indicated on an adult function report that she spent time with others, talked on the telephone with family, spent time with family and friends regularly, and went to the grocery store and to the mosque two to three times per month. *Id.*

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). An ALJ also may rely on a claimant's daily activities to discount the claimant's credibility if the claimant is able to spend a substantial part of his or her day engaged in activities that are transferable to a work setting. *Id.*

While the ALJ may be technically correct that the record does not support a finding that plaintiff did not do *any* activities of daily living or that she had *no* friends, the record does not contain substantial evidence of ability to perform household chores for a substantial part of the day or indicates the presence of activities that are transferable to a work setting. *See* AR 55, 57, 61-63, 249-53, 255, 257-61, 269, 276; *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities" and are thus not "[t]he sorts of activities" that can be readily transferred to a work environment). Rather, the record shows plaintiff can do some daily activities at times, but is generally limited by her impairments and gets help from her family. AR 55, 57, 61-63, 249-53, 255, 257-61, 269, 276; *Diedrich*, 874 F.3d at 643 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (quoting *Fair*

*v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Further, the record is conflicting in regard to the level and extent of plaintiff's social interactions. *See* AR 252, 260. This too then is not a valid basis for discounting plaintiff's credibility.

The ALJ next discounted plaintiff's credibility for the following reason:

> The record indicates life stressors affected the claimant's symptoms. However, the undersigned notes some inconsistencies in her reports. In September 2015, the claimant presented to ER with increased agitation. Jacob Heller, MD noted the claimant found out that day that her oldest and favorite brother was killed in a roadside bomb attack in Iraq and that since hearing that news, she became inconsolable (Exhibit 12F at page 86). However, in December 2015, the claimant reported that her brother died of a heart attack (Exhibit 15F at page 6) and in March 2016, when Dr. Andersen asked about what caused the death of her brother, the claimant responded that her family has kept that information from her (Exhibit 16F at page 4).

AR 27. As plaintiff points out, however, although tangentially related to her symptom testimony and self-reports, the ALJ fails to explain how these inconsistencies necessarily call into question the nature or severity of the alleged *symptoms* themselves. *See Molina*, 674 F.3d at 1112 (9th Cir. 2012) (ALJ may consider a claimant's inconsistent symptom testimony).

As the Ninth Circuit has recently recognized, the ALJ's evaluation of a claimant's subjective symptoms should not be an examination of the claimant's "character" or "apparent truthfulness," but instead should be an evaluation of "the intensity and persistence of symptoms." *Trevizo*, 871 F.3d at 678 n. 5 (quoting SSR 16-3p (2016)). Given that her statements concern a highly traumatic series of events, it is entirely possible that any inconsistencies between those statements may be due to the stress the deaths in her family have caused her. The ALJ's failure to explore this aspect of the evidence of plaintiff's disability was error.

The ALJ further discounted plaintiff's credibility because she "has never worked outside the home." AR 27. This can be a proper basis for finding that a claimant lacks credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found the claimant's

extremely poor work history and lack of propensity to work in her lifetime negatively affected her credibility regarding her inability to work). The record, though, indicates plaintiff is originally from Iraq, having moved to the United States after her children were born (AR 58), and having "had to flee Iraq for their safety after their family was targeted by militant fighters after they learned [her] husband had worked with American forces during the occupation" (AR 734).

Thus, plaintiff's lack of an outside work history may be due to war and cultural or other factors unique to her having grown up and lived in fear of violence in wartime, and spending a significant portion of her life in Iraq; the ALJ did not take this into account anywhere in the opinion. Again, the ALJ's failure to explore this aspect of plaintiff's evidence of disability was error.

Lastly, the ALJ appears to have discounted plaintiff's credibility on the basis that while she reported having "lost the ability to speak English," and while her stepson also stated that she "sometimes forgets Arabic," she "signed a function report indicating she completed the report." AR 28. The name on that function report, however, is printed on a line under the subheading "Name of person completing this form," and therefore it is not at all clear that plaintiff actually "signed" the report. *Id.* at 255. Further, the name may have been placed there merely to indicate who was providing the information, not the person doing the writing. In any event, the evidence of lack of veracity or inconsistency on plaintiff's part here is at best ambiguous. Since the ALJ failed to resolve that ambiguity, she erred in relying on the above evidence to find plaintiff less than fully credible.

III.    *Plaintiff's Husband's Testimony*

Plaintiff's husband testified at the hearing regarding what he observed to be plaintiff's

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 17

significant symptoms and limitations. AR 60-64. The ALJ must take into account lay witness testimony regarding a claimant's symptoms, unless the ALJ expressly rejects a lay witness's testimony and gives reasons germane to that witness for doing so. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

The ALJ gave "limited weight" to plaintiff's husband's testimony "for the same reasons" he discounted plaintiff's credibility regarding her own testimony and self-reports. *Id.* at 28. Where a claimant's testimony has been properly rejected, lay witness testimony that is similar thereto may be rejected for the same reasons used to reject the claimant's testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685 (9th Cir. 2009). Here, however, the ALJ did not properly reject plaintiff's testimony and self-reports. The ALJ's rejection of her husband's testimony, therefore, is equally improper.

IV.  *Remand for Further Administrative Proceedings*

Plaintiff seeks reversal and remand for an award of benefits or in the alternative for further administrative proceedings. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 18

serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels,* 874 F.3d at 668.

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon*, 880 F.3d at 1045 (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

A remand for further administrative proceedings rather than a direct award of benefits is warranted. There is uncertainty and ambiguity in the record. Remand for consideration of plaintiff's claim is thus the proper course of action.

## CONCLUSION

The Commissioner's decision to deny benefits is REVERSED, and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

Dated this 11th day of December, 2018.

*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge